Good morning, Your Honors, and may it please the Court. My name is Dan Bucher, and I'm appearing today as counsel for Plaintiff Appellant Herbal Brands, Inc., which I'll reference as Herbal. I'd like to reserve two minutes of my time for rebuttal. That's fine. Just keep track of your time, please. Your Honors, this appeal requires this circuit to decide how the express aiming requirement of specific personal jurisdiction is analyzed when a defendant is using a highly interactive website to continuously and directly sell products into the forum state, even after learning that sales are causing harm in the state and giving rise to claims of a forum resident. Those are the facts of this appeal, and this Court has not yet considered in any precedential decision how express aiming should be analyzed on facts like those here. We think this Court should hold that. From an online seller, defendant has engaged in the conduct I just described. The seller is expressly aiming intentional acts at the forum and is subject to jurisdiction. Defendants who engage in such conduct are deliberately making high-quality contacts with the forum that give rise to the plaintiff's claims. Their sales are not random, fortuitous, or attenuated because defendants control whether they sell the products at issue into the forum, could stop doing so but choose not to, and thus can certainly reasonably anticipate that they could be hailed into court in the forum. Now, as you know, the Court held here that appellees are not subject to jurisdiction despite their admitted sales of infringing products into Arizona because my client did not allege that appellees are somehow uniquely exploiting Arizona with their sales or other conduct. Appellees are urging this Court to now adopt that standard as a law of this circuit and hold that analysis is applied in cases that involve only passive websites, such as Maverick's Photo, should apply to jurisdictional analysis of all websites, regardless of their interactivity or the level of commercial activity that a defendant conducts through them with the forum. Counsel, I'm going to interrupt you if I could. We've read the briefing, and I think this is a really important case, and it's a very important issue and an interesting one. So I'm trying to figure out how to analogize it and how to think about it, and this is really for the benefit of both of you. But just so you know what I'm thinking, because when I was an oral advocate, I always wanted to know what the judge was thinking. When I look back, pre-Internet days, we used to be able to, as far as interactive websites are concerned, I'm setting aside a website that just shows pictures, right? Because I'm equating that to a magazine. If I just go online and look at something, that's Maverick's. That's a different category. But in terms of retail sales, when I was a kid, my mom could order something from the Sears robot catalog. She just did it through the mail is all, and now I suppose she could go online and do that. That's what I'm thinking about as an interactive sale, an interactive website. And the difference here, I guess, is, and I think the only difference, is there's this middleman. I'm going to call this a middleman, this fulfillment center. And, well, let me just ask first. Do you agree that if that's where they, take out the middleman for a minute. If this were just an interactive website and it went to Sears Roebuck, I don't mean to pick on Sears, and they were fulfilling the same order, except that rather than getting something in the mail, they're getting it over the Internet. Would we analyze it the same way? Yeah, and, Your Honor, I agree with you completely. I think this is a very important decision because it hits on an area that the circuit has just not established law in yet. It seems impossible given the amount of retail over the Internet. But anyway, I think you're right. So you think that's the same as the Sears Roebuck example, except for using the Internet? I mean, just legally, you think that would be the same result? Well, yeah. I mean, I think that, first of all, we don't think that it makes a difference that the Appleys here used Amazon. Amazon, we're not there yet. Okay. Because I need to take this one step at a time. Sure. We're going to take the middleman out here. There's no fulfillment center. This is just, rather than getting it through the mail, they're getting an order over the Internet. Is there any distinction there? I think if Appleys here were just directly selling the products through their own website, it would be no different than the fact that they're selling through Amazon. So I still get it through the mail under this hypothetical, right? Sears or whomever is still just sending it through the mail. Correct. I would say there that – Okay. I'm going to stop. I get that. I'm going to take yes for an answer. Because now we need to put the middleman in. And as I understand it, the middleman here is the retailer is taking the position they didn't send the product knowingly to Arizona, right? And, in fact, they didn't really send the product anywhere. They got an order and then set aside the resale for a minute in my hypothetical. This is just a product directly to the consumer. But it came from Amazon or maybe it came from a storefront on eBay or something. Would that be analyzed differently? I think that if the Appleys here were instead selling to some third party that was then selling to consumers, that would be a different case. That would be more of like a stream of commerce case, like some of the cases that Appleys cited. But that's not what's happening here. There's two different – Let's look at Landmatt for a minute. If the tort were a product that I ordered a small appliance and it came to me and it burned me or blew up or something, you think the purposeful availment test would be the same? The jurisdiction test would be the same? Yeah, I think – Samples to Internet. The claim would be arising in tort. And I think that's an important point because, as we argued, Appleys' position, if it were accepted, would essentially immunize online sellers from jurisdiction because most sales occur through sites like Amazon or eBay that are not especially targeting any state. They don't need to do that. If you've been on Amazon, you've seen this. And that would apply equally to our claims of trademark infringement in this case, just the same to a claim for injury or some sort of tort arising from the sale. Appleys' position would mean that the injured consumer who bought a product from Appleys or any other online seller would have to travel across the country just to sue them because Appleys would say, well, we didn't target your state or any other state. We didn't say, Arizonans, this is especially for you on Instagram or something, and so we can't be sued. Are you analyzing this different? I started with a tort claim. Would you analyze this differently for a contract claim? Yeah, the circuit has recognized that the standard is different if the claim sounds in contract. But there are lots of claims that sound in tort, I think, including the example you just described that would, again, be in a situation that Appleys actually embraced in their brief. I don't think they disputed that the rule, the practical effect of the rule they're pushing for would mean that generally online sellers can only be sued in the suit where they're located. They said that was all well and good and would help them more efficiently manage litigation. Can you tell me what the rule ought to be? So we think the rule should be that if an online seller is a high-volume online seller, not like the one-time seller in Pachetto, and receives notice that certain products it's selling are causing harm in a state, and then it continues to regularly and continuously sell those same products into that state, that qualifies as express aiming. First of all, I'm not sure what a high-volume seller would be, so that's one question. What does it take to be a regular? Yeah. Is there a number? I think that that's a tough question that courts have struggled with. Both sides cited a couple cases where courts considered whether a single sale was enough. And in Pachetto in 2008, this court did find that jurisdiction was lacking, but it emphasized that the defendant there had sold only one product into the forum and had not sold any other products at all. Applebee's here, we put forward allegations undisputed by Applebee's that they have sold at least 25,000 units of the infringing products at issue. They also list lots of other products. These are big-time sellers. So while I can't give you an exact numerical number of when you cross the threshold into a big-time seller, in this case, we think there's no question that this was far, far, far different from the seller in Pachetto. Okay, so can we go back to your proposed rule? Because as I understand it, your contention, although you wanted some discovery, your contention is that these defendants knew they were selling a lot of products. But we don't really know that they knew that they were selling a lot of products in Arizona, right? Yeah. Our allegation is based on the fact that they had sold lots of products total and that they were taking no action to prevent people in Arizona from buying. We didn't think jurisdictional discovery was necessary because they admitted the sales in Arizona. They admitted the regular sales that we allege. Go back to express aiming, though, express aiming. So again— Hold on. So I understand that—if I could, please. I understand their position is they weren't expressly aiming at Arizona or anywhere else. They were doing business with Amazon, what I'm calling the middleman. And what they wanted was that middleman, my term, to sell wherever they could sell. And maybe that went to Arizona and maybe it didn't. Maybe it was a few. What do we do about that? I don't think the record tells us that this defendant knew this defendant was selling necessarily a significant number in Arizona, do we? So just to clear up one factual point, there are two ways to sell on Amazon, to sell directly to Amazon, and then Amazon resells. They are not doing that. They are selling directly to consumers just using the Amazon infrastructure to ship their products. Right, so that's closer to my mom going on—except it's eBay, which my mother would never have done. But anyway, she thinks she's ordering directly from Sears Roebuck. And your point is that that is an allegation. This consumer thought it was buying directly from—it's just that it had been resold by an unauthorized seller, right? Yeah, there was no resale to Amazon here. It was directly from Amazon. And again, to go back to your point about express aiming— I'm sorry, when you say directly from Amazon, I think— Sorry, I meant directly from Applebee's to the consumer. Okay, good. I see my time's almost up. No, go right ahead. I took a bunch of your time. I think you're both going to wind up answering more questions, so go right ahead. Okay. I talked briefly about what the practical effect of the rule would be. We also think that applying—athletes are essentially asking this court to conflate together all websites, no matter their interactivity, and apply the rules in Mavericks, where the court required the defendant to somehow uniquely exploit the forum state, to an online seller like Applebee's here, who are using a highly interactive website to sell a great number of products directly into the forum state. We think that Bechetto sort of anticipated that situation and suggested that jurisdiction would exist there. We also think that that completely ignores the difference between a passive website like the website in Mavericks and a very interactive website like Amazon. But how interactive is interactive enough? I gave you right at the outset, I think that's a really important distinction. We're just talking about interactive websites. Yeah, I think that when you get— We're also talking about sellers of fairly large volumes. We have to be concerned too, don't we, about the small seller. What about an Etsy website? Somebody who's selling, you know, individually handcrafted items and doesn't do a large volume. Is that person going to be subject, because he or she is selling through Etsy, to being sued in 50 states? We think that's certainly a closer call if the website falls more in the middle of the interactive scale or if there's just less sales. Those are not the facts here, however, and we don't think this court has to reach that issue further. We don't know the facts here with regard to Arizona, do we? That's true. We never did take jurisdictional discovery, and I think the court denied it because its conclusion was no matter what the amount of sales are, it doesn't matter because we didn't allege that they had especially targeted Arizona. We think a remand for jurisdictional discovery would be a possible outcome here, but if that were to happen, we would request this court instruct the court that not very many sales in Arizona are needed and that certainly no special targeting is needed because the district court thought otherwise, and if that message—if that was not told to the district court, it would likely just deny anyway, no matter what the jurisdictional discovery showed. Under your proposed rule, wouldn't there have to be jurisdictional discovery in every case? Well, the circuit standard is that allegations that aren't contradicted with evidence at this stage of the proceedings and a motion to dismiss for lack of personal jurisdiction are accepted as true. Had they come forward with any kind of evidence, of which they had none, saying, for example, we actually haven't sold in Arizona at all since we got your letters and learned that you were claiming harm there, or we tried to stop selling, very few products have gone through, this would be a different case. They didn't do that, and it's because they submitted no evidence that we thought jurisdictional discovery wasn't needed. Okay. Judge Gosselin, do you have any questions? You're asking us to, in fact, write a rule, and I'm still struggling with the question of what's too little, what's enough. Is there any standard that you can offer in terms of the quantity of sales required in any particular jurisdiction? Because the concern ultimately is that we're facing a situation where every seller, including the little seller of beaded necklaces or something, is exposed to jurisdiction in all states and territories simply because that's the modern economy. But you can understand the peril that puts the truly small maker of crafts in. And so I would anticipate there to be some protection for the isolated sale, but it's hard to figure out what that rule should be. And I understand it's hard for you to figure out what it is, but if you propose us to write a rule, what do you think it should be? So I have three quick responses to that, Your Honor. First of all, our position was not, real quick, that jurisdiction would be possible anywhere if they continued selling. We mentioned in our briefs, we thought Arizona was where the jurisdictionally significant harm was suffered. It's where my client is located. Had they stopped selling in Arizona, this would have been a different case, but they did not do that. As to your question about what should the standard be, we think that it's fair to say that a single sale in Bechetto may not be enough. We think the number should be relatively small. We absolutely don't think it should be requiring any sort of special targeting. We also don't think that it should be tied to a percentage of the sales into that state versus other states. We think that the level of commercial activity the online seller may be doing in other states, they're not the forum state, is not really relevant to this analysis. It's more, are the sales into the forum state, once they learn of the harm there, sufficient enough to constitute express aiming? We think the number should be relatively small. I would certainly say in the double digits of sales would be sufficient. Finally, Your Honor, what we're talking about here is the express aiming requirement of personal jurisdiction. There is sort of another safety valve in the analysis here, which is the third step of specific jurisdiction, that the exercise of jurisdiction must comport with official notions of substantial justice. Is that the safety valve for the Etsy seller? It could be, and I could imagine a case where a court could hold that the sales, while relatively small, perhaps are enough to constitute express aiming, but nonetheless, the court exercises discretion in the third step to find that, nonetheless, it won't exercise jurisdiction. We're taking you way, way, way over time, and you'll be back. So could I ask you to wrap up there? And just for planning purposes, we'll put a couple of minutes on the clock when you come back. I'd like to hear from opposing counsel. Thank you, Your Honors. Good morning, Your Honors. My name is Serge Kronos, and I represent the defendants' affiliates. To jump right into express aiming, plaintiff's theory here, appellant's theory, relies on two acts, defendants' nationwide sales on Amazon and the cease and desist letters sent by plaintiffs to defendants. They're really clear about their cease and desist letters. Their point is just your client was not on notice and continued to sell. Your Honor, if I may read from. You may, but it's your time, but we have read all of that. Go right ahead. Just one sentence from Docket 32, the Rule 28J letter that appellant sent. Appellant argues that appellees expressly aimed acts only at Arizona because appellees regularly sell products on the Internet and chose to continue selling infringing products to Arizona consumers despite learning appellant is located there. Yeah, I think that's what I just said. We understand that. And we understand your response because it's well brief, but. Right. It's Washington shit is our response. Yeah. OK, so then I'm just just focusing on. That's really what would be helpful for us. This is the part that's really troubling us. Why is this different pre and post Internet? Your Honor, this court's cases. To discuss, we're talking about our published cases, right? Because your briefing does rely on some unpublished on someone published. Yes. Just just discussing the published cases. Appellant argues that that this court's cases don't require uniquely exploiting the language that was just used. But but the language from Mavericks is appeals to and profits from an interactive Web site. As for us, that's I'm not trying to give you a hard time, but that's a really important distinction for us. OK, then why don't we look at the Mavericks AMA multimedia versus one up and will company versus Lee from just a few months ago? Those are both interactive Web sites. And what the court focused on in those two cases in AMA multimedia, the court found no express aiming. And because the market was global, only 20 percent was in the forum, which is still substantial. Two, there were geolocated ads directed to the forum, but they were directed to every forum. So there was no intent to profit just from the forum in that case. Well, why is just for the forum important? I mean, if you're putting the wares out there to be purchased any place, you're putting the wares out there to be purchased every place. And why shouldn't Arizona perceive it to be one of the targets of the sales effort? Well, because we feel express aiming means aiming at something, not not everything. I mean, if I throw a hundred darts or why? I mean, Arizona, your client isn't turning down stage to come in from Arizona. We're not. I don't know that there would be a way to do that. I don't believe Amazon lets you just turn off state. No, we haven't had any discovery. Yes, your honor. So one question I have, just in case it's important to you, is that one when a defendant in your client's position receives that kind of a letter to say, hey, these sales, these secondhand sales are contrary to our authorization agreement. Whether your client would have had the ability to direct Amazon, we don't want to sell in in Arizona anymore. We don't know that yet. We don't know that yet. I don't I don't believe that's the case, but that's that's not in the record. Go back to Judge Clifton's question about selling everywhere. So back to the question that this this court's cases have found and the whole Calderby-Jones effects test has to do exactly with how are you trying to direct your conduct at the forum? So that the issue in Calder was there was a person in California. This article was written about. So the conduct was directed at California. And I think that I mean, that's what the court talked about. And it would be it wouldn't be fair to say that that that conduct was directed to New Jersey merely because you sold the magazine in New Jersey. So that was directed at California. And that's what Calder talks about. And in other cases. So what forum would you say was targeted by your client's sales on Amazon? None, Your Honor. Isn't that the problem? Are you saying your client can't be sued anywhere because you're targeting everything? I would say we can only be sued in New York because we're not targeting any state. So as an example. And yet what percentage of your sales are in New York and what percentage of the sales are elsewhere? We don't know that is the record, but it's pretty confident that it's not like New York is the focus of your sales efforts. It may be the focus of your corporate organization, but the sales effort is what we're looking at here. And the sales effort is almost certainly not limited to New York. I agree on it. And I don't think our our our sales are directed to New York, either. I think there would be jurisdiction in New York because there would be general jurisdiction since we're in New York. So isn't that the problem by selling this way? You're saying you can't get me except where I choose to be. Well, it's certainly a problem for appellant, but I would say that, well, isn't it a problem for the plaintiff who's injured by a product? It would depend on whether we were expressly aims. So, for example, how's it different? Go back to the I'm just a simple person. Go back to Sears Roadwork. If I were to receive the small appliance and it blew up and burned me and I got it in the mail because I sent my order form that way versus getting it back through an interactive Web site. I'm just really struggling with how is that analytically different in terms of express aiming? Or is it your position that I wouldn't have been able to sell even if I'd ordered it by mail? Oh, that is our position, Your Honor. Express aiming requires. Because because even though even though the defendant knows they're sending me this, whatever the small appliance was to my home in Omaket, Arizona, that that's not that's not good enough. It's not good enough because we're not targeting Arizona at all. Now, if we were targeted, you just sent me the product you just sold to me in Arizona under under this hypothetical. So why is that not good enough? Because we're we're selling. I mean, a customer places an order from from all 50 states and indeed Amazon actually delivers worldwide. So Amazon, just go back to the very simple. There's no in this hypothetical. There's no middleman. There's just there's no middleman. We're getting we're getting some orders from all over the country, including Arizona, including Alaska. And that's not express aiming. No, Your Honor. Express aiming requires targeting that state deliberately. So, for example, if we were selling Grand Canyon statues and the big market was Arizona, because that's where most of them are sold by my gift shop, let's say, then, yes, I would say whether we're selling an Amazon or through our Web site or through a catalog, there would be express aiming here. But there is no express. I'm not hypothetical because what's the aiming there? It happens that the product may be more popular in Arizona. But as you just described it. A person in the position of your client is willing to sell any place. They're not expressly aiming at Arizona. It just happens the products more popular there. But I don't see how that checks off a box or gives us a meaningful distinction. You're correct. The distinction would be we would have to take some kind of action to target Arizona, for example. Why does it require? I mean, what seems to me is that this notion of purposeful availment has been morphed into targeting. That is, I'm really aiming here. And if I hit someplace else and I'm in fact trying to hit everybody. I'm not aiming. And I think purposeful availment, which is where this starts, doesn't require that kind of targeting that you seem to suggest because your client sells everywhere. He's not really vulnerable any place. Well, your Honor, purposeful availment doesn't apply here because of tortsuits. It would be purposeful direction. So it used to be that back to Sears Roebuck, they sent that catalog to my mom in the mail and then she would resend it. And they know where they're sending. Now they don't have to do that. Now they just put it on the Internet. But that's a catalog. That's still an order form. If you just think of that hypothetical. And I'm really trying to invite you to why is that different than the express aiming that happens under the first hypothetical? Is it the number of sales? Is it that they're expressly aiming for all 50 states? What is it? I just don't think it's possible to expressly aim. I think that term would have no meaning if express aiming meant the entire world. So Amazon ships to all 50 states and indeed many countries in the world. So I mean, aiming, right, if we think of a crossbow or darts, again, doesn't mean you just throw them anywhere and where they hit is where you aim. You aim where you intend to aim. So there would have to be. So they're intending to aim and they're intending to sell. They're right there by placing their product on Amazon. They hope they're going to sell all over the place. Right. They do. Exactly. Exactly. They do. And so they've aimed nowhere. They've aimed, they've aimed nowhere. That's accurate. Because they've aimed everywhere. Oh, I would say they haven't. I would say the first formulation is accurate. They've aimed nowhere. And I think just going back to aiming multimedia and Will Company versus Lee. So in Will Company, this court in the presidential decision found that there was express aiming and they call this a closer question. So we think this is kind of the outer bounds of express aiming. And the court found the defendants there made two key choices demonstrating their intent to cultivate an audience in the forum. One, host the website in the forum and purchase content delivery services in the forum. And two, website included U.S. compliance language. Thus, the defendants, in the words of this court, prepared for forum visitors to the exclusion of all others. So what they did in that case, in Will Company versus Lee from August of 2022, was they purchased, they contracted with providers that would make the website work quickly, that would make the users be able to download the videos quickly in the United States and slower in Japan. So to the exclusion of all others. And that was the opposite of aiming multimedia versus whatnot. Another decision from 2020, where the court said that even though geolocation ads were used, they were used in every forum. And this is very similar to this case. Use of every forum and not specifically targeting the United States, which was the forum in that case. They also use the DNS provider. And there was no evidence that it was chosen to appeal to U.S. market or generate, quote, more U.S. users as opposed to more users globally. Again, the same exact situation that we have here. We are, as you said, just trying to get sales anywhere, whether it's New York, Florida, United Kingdom, Alaska. So we feel that, you know, as your Honor said, there is no express aiming. We're express aiming at no state. So and not at Arizona. You're out of time and over time. Would you like to wrap up, please? Yes, Your Honor. Just just briefly about. About the third factor regarding that extra jurisdiction wrap up time. Oh, I'm sorry, Your Honor. That's OK. What's your strongest argument? What's your thesis? Our strongest argument is that there is no express aiming in Arizona. There is no evidence and there are no allegations that we somehow even thought about Arizona. Even after you got a certified letter telling you that your clients were harming and doing harm in Arizona. And that argument would be foreclosed by Washington shoe and this abrogation. OK, but but yes, we were aware of some of the clients read it, that they would be aware. But but but again, there'd be nothing for them to do about that unless they first take this goods off Amazon and start shipping without Amazon, which we don't know that we don't know if they had the option of just discontinuing sales in Arizona. Right. We don't know that. OK, you've been very patient with our questions and I appreciate it very much. We'll hear from here from opposing counsel, please. Thank you, Your Honor. It's just a few quick points and happy answer questions. I think what Apple's lawyer just said kind of confirms what I had said, which is they want a standard that will effectively never be satisfied and will result in online sellers. Amazon and virtually any other website that's used today by high volume online sellers to be subject to jurisdiction only in their home state. And we think that's not what the law should be. It would not be reasonable or fair to plaintiffs. Second, the AMA and Wilco cases that counsel discussed, we think are no different than Maverick's photo. The websites at issue in those cases merely displayed adult videos. So the court was troubled by the thought that jurisdiction could exist only because people in the forum state had gone to the website and watched the videos. Very similar to Maverick's. We think for the reasons that you said, those have no application to this case, just like Maverick's does not. Additionally, I think Apple's just told you that they essentially want to have their cake and eat it, too, as some of the decisions we cited have phrased it. They want to be able to sell everywhere and benefit greatly from selling into all states while having none of the exposure. We agree with the decisions, the many decisions we decided that rejected that idea and held that online sellers should be subject to jurisdiction when, as in this case, they continue selling products into a state after knowing those sales are causing harm. Finally, I just wanted to briefly address another aspect of the court's holding, which was that we didn't satisfy the arises out of a relates to standard. I don't know much to say about that. We briefed it. We think that conclusion was plainly wrong because obviously the claims here arise out of the sales of products. And to the extent that other side made a causation argument, we think that was foreclosed by the Supreme Court's analysis in its recent four decision where it held that the standard requires only the claims relate to the contacts with the forum state. And certainly here are claims that minimum related to Apple's admitted sales of infringing products in Arizona. So I just have one question for you. What is the circuit that has adopted a rule that is closest to the one you're asking us to adopt today? It would be the seventh circuit. The very few circuits have addressed this for some reason. We recognize that seventh circuit held a single sale was enough and there is some tension with the shadow. Yes, but we think that the closest that is the closest. Yes. And you've answered my question and you've gone over time to cut you off there. I want to thank you both for your excellent advocacy. Great briefing and your patience with our questions today. We'll take that case under advisement instead of recess. Thank you.
judges: GRABER, CLIFTON, CHRISTEN